## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

**JARVIS CHAD WILLIAMS**                                    **CIVIL ACTION**

**VERSUS**                                                            **NO: 11-0153-MLCF-SS**

**MICHAEL J. ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY**
**ADMINISTRATION**

### REPORT AND RECOMMENDATION

The plaintiff, Jarvis Chad Williams ("Williams"), seeks judicial review, pursuant to Section

405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner") denying his claim for supplemental security income

("SSI") under Title XVI of the Act, 42 U.S.C. § 1382(a)(3).

### PROCEDURAL HISTORY

On July 31, 2007, Williams submitted an application for SSI benefits. He reported that his

disability began on July 19, 2007. R. 55-57. He reported that a broken leg, bruised kidneys and torn

tendon in his knee limited his ability to work. R. 86. On September 19, 2007, his application was

denied. R. 32-35. On April 27, 2009, there was a hearing before an Administrative Law Judge

("ALJ"). R. 16-30. On July 20, 2009, the ALJ issued an unfavorable decision. R. 6-15. On

December 16, 2010, the Appeals Council denied the request for review. R. 1-5. On January 27,

2011, Williams filed a complaint for review. Rec. doc. 1. The parties filed cross-motions for

summary judgment. Rec. docs. 13 and 14. Williams is not represented by counsel.

## STATEMENT OF ISSUES ON APPEAL

**Issue**.  Whether there was substantial evidence supporting the ALJ's findings.

## THE COMMISSIONER'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following findings relevant to the issues on appeal:

1.      Williams has not engaged in substantial gainful activity since July 31, 2007, the application date (20 C.F.R. 416.971 *et seq*.).

2.      Williams has the following severe impairments: status-post fracture of the left mid-shaft femur with patellar tendon repair and tibial plateau fracture (20 C.F.R. 416.920(c)).

3.      Williams does not have an impairment or combination of impairments that meets or medical equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.925 and 416.926).

4.      Williams has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 416.967(a) except he would need to alternate sitting after one hour to allow stand/walk option for up to five minutes before returning to a seated position.

5.      Williams has no past relevant work (20 C.F.R. 416.965).

6.      Williams was born on March 30, 1985 and was 22 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 C.F.R. 416.963).

7.      Williams has at least a high school education and is able to communicate in English (20 C.F.R. 416.064).

8.      Transferability of job skills is not an issue because Williams does not have past relevant work (20 C.F.R. 416.968).

9.      Considering Williams' age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Williams can perform (20 C.F.R. 416.969 and 416.969a).

R. 9-15.

## ANALYSIS

a.      **Standard of Review.**

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005); Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971); Perez, 415 F.3d at 461. Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000).  This court may not re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's.  Perez, 415 F.3d at 461; Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990).

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91, 113, 112 S.Ct. 1046, 1060 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it.  Villa, 895 F.2d at 1022; Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988).  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

To be considered disabled and eligible for disability insurance benefits, plaintiff must show that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (1997).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Perez v. Barnhart, 415 F.3d at 461; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 514 U.S. 1120, 115 S. Ct. 1984 (1995).[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

---

[1]  The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled. 20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

The claimant has the burden of proof under the first four parts of the inquiry.  Id.  If he successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing.  Greenspan, 38 F.3d at 236; Kraemer v. Sullivan, 885 F.2d 206, 208 (5th Cir. 1989).  When the Commissioner shows that the claimant is capable of engaging in alternative employment, "the ultimate burden of persuasion shifts back to the claimant."  Id.; accord Selders, 914 F.2d at 618.

"In determining whether substantial evidence of disability exists, this court weighs four factors: (1) objective medical evidence; (2) diagnoses and opinions; (3) the claimant's subjective medical evidence of pain and disability; and (4) the claimant's age, education, and work history."  Perez v. Barnhart, 415 F.3d at 462.  "The Commissioner, rather than the courts, must resolve conflicts in the evidence."  Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995).

b.     **Testimony at the Hearing.**

At the time of the hearing Williams was 24.  R. 19.  He was not married.  R. 19.  He had a driver's license.  R. 19.  He did not like to drive because he was uncomfortable and afraid.  R. 20.  His last work was about two weeks before the accident in June 2007.  R. 20.  It was temporary construction work.  R. 20.  Most of his other work was temporary at warehouses.  R. 21.

Williams finished St. James Parish high school.  R. 27.  He began IT training at St. Rose in February 2009.  R. 20 and 27-28.  He did not have problems with it.  R. 28.  They understood his situation.  R. 28.  His only problem with typing was sitting for a long period.  R. 28.

Williams took Vicodin, Flexeril, and a muscle relaxer.  R. 21.  He did not experience side effects.  R. 21.  He did not receive any mental health treatment.  R. 22.  His mother testified that

he was in a lot of pain and there was a possibility that his leg may be amputated.  R. 24.

Williams used a cane which was prescribed by Dr. Maki.  R. 21.  He could not walk for a long time without it.  R. 22.  He was able to stand a little while without the cane.  R. 22.  He sought to balance his activities by moving, sitting and lying down.  R. 23-24.  He could sit for an hour, stand for five to ten minutes, and then return to a seated position.  R. 24.

Williams could pick up a gallon of milk.  R. 22.  He did not help around the house.  He sought to avoid heavy lifting or strenuous work.  R. 23.  He did not do laundry.  R. 23.  He did not go shopping or to a mall because of the amount of walking. R. 23.  He watched television for about six to eight hours a day.  R. 23.

His mother testified that he had problems walking.  When the weather was cold he was in pain.  R. 24.  She testified that he was limited in what he could do.  He could not sit, stand or walk for long.  R. 25.  He spent most of the day sitting.  He watched television sometimes.  R. 25.  He could not walk or stand for long without his cane.  R. 25.  He did not do household chores.  R. 26.

The vocational expert testified that there was no past relevant work.  R. 29.  The ALJ's hypothetical was for sedentary work with the need to alternate sitting after one hour to allow for standing or walking for up to five minutes.  R. 29.  The ALJ testified that there were jobs which such a person could perform.  R. 29.

c.   **Medical Evidence**.

On July 19, 2007, Williams was admitted to Thibodeaux Regional Medical Center for an open wound to the left knee and closed femur fracture after an auto accident on July 18, 2007.  R. 116.  Bilateral femur radiographs revealed severely comminuted apparently complex fracture of the left mid-shaft femur.  R. 108.  Bilateral knee radiographs suggested a large laceration without

underlying bony injury.  There was concern for injury.  R. 109.  CT Scans of the cervical and lumbar spine did not reveal any evidence of acute traumatic injury.  R. 104-05.  A chest radiograph did not reveal any evidence of cardiopulmonary disease or acute traumatic injury.  R. 106.  A pelvic radiograph did not reveal any fracture or dislocation of the bony pelvis.  R. 107.  Bilateral tibia and fibula radiographs did not reveal any bony injury.  R. 110.

On July 19, 2007, Dr. Neil Maki, an orthopedic surgeon, performed: (1) debridement of open fracture; (2) open reduction with locking rod of left femur; (3) debridement of open injury left knee skin; (4) debridement of fracture of tibia skin; (5) repair of the lacerated patella tendon left knee; and (6) partial patellectomy.  R. 118-19.

On July 20, 2007, Dr. Chester Weimer examined Williams in response to a finding of microscopic hematuria in his urine.  There was evidence of anemia but it was not anticipated to be urologic in origin.  The hematuria was probably from benign catheterization and secondary to a bladder contusion.  R. 120-21.  Williams was discharged on July 23, 2007.  R. 122-23.

On August 3, 2007, Williams returned to Dr. Maki.  He had a healing fracture and was slowly improving.  Vicodin was prescribed.  He was to continue with a knee extension splint for four weeks and could continue with weight bearing as tolerated.  He was to return in four weeks.  R. 125.

On October 1, 2007, there was an MRI of the left knee.  It revealed: (1) complete disruption of the patellar ligament; (2) complete disruption of the posterior cruciate ligament; (3) non-displaced fracture involving the lateral tibial; (4) loose tiny calcified free body within the articular space of the knee; (5) changes from the rod fixation with partial fracture of the distal locking screw; and (6) small joint effusion.  R. 113-15.  On October 15, 2007, the screw was removed by Dr. Maki.  R. 189.

Williams received physical therapy and electrical stimulation from September 5, 2007 through January 1, 2008. R 143-164). On November 15, 2007, the therapist reported that Williams was making good progress on restoring the range of motion in his knee, he was ambulating well, and he was attending therapy on an inconsistent basis. On November 20, 2007, Williams was seen by Dr. Maki, who found slow improvement and limited flexion. He was to continue with PT and return in six to eight weeks. R. 193.

On January 15, 2008, Williams was seen by Dr. Maki, who noted that "he is actually doing great." The motion in the knee was from 0 degrees to 140 degrees. Williams flexed his hips well past 90 degrees. He was to return in six months. R. 192.

On July 15, 2008, Williams returned to Dr. Maki. Williams reported some pain, but it was noted that "he is doing very well." The range of motion was the same as in January, but there was some crepitation. He had slight discomfort around the left hip and knee. He took over the counter anti-inflammatories. He could follow-up on a yearly basis. No other special treatment was needed. R. 192.

At the request of the Commissioner, on January 23, 2009, Williams seen by Dr. Miljana Mandich, an internist. Williams reported taking Vicodin and Ambien. R. 194. Williams could walk without the cane and without any noticeable limp. He had almost a full range of motion in the left knee. It may have been slightly limited by guarding on his part. He had symmetrical circumference measurements of thighs and calves. The rest of the exam was unremarkable. R. 198. An x-ray of the left knee revealed some osteoporosis, the presence of the rod, and a well preserved joint space. There was no evidence of acute fracture, dislocation or other disease. R. 201. He could

8

continuously lift and carry ten to twenty pounds.  R.  202.  He could occasionally climb stairs and ladders and frequently stoop, kneel, crouch and crawl.  R. 205.

d.     **Plaintiff's Appeal.**

**Issue**.  Whether there was substantial evidence support the ALJ's findings.

        Williams is proceeding without counsel.  In these circumstances, his motion for summary judgment must be liberally construed.  Grant v. Cuellar, 59 F.3d 523, 524 (5th Cir. 1995).  Williams' motion states that: (1) he was in a serious auto accident on July 19, 2007; (2) he had to be cut out of the car; (3) he suffers from loss of memory, disabling pain, and inability to maintain his balance even with a cane; (4) he is unable to keep a job; (5) he suffers from depression; (6) his condition is deteriorating; and (7) he does not have the ability to perform activities as he did before the accident. Williams argues that: (1) the Commissioner has not been fair to him; (2) the Commissioner has not really read over and taken into consideration his disability situation; (3) the fact that he may need more surgeries has been ignored; (4) the Commissioner does not understand what it is like to be denied the ability to do a full range of activities; (5) his mental distress has been ignored; and (6) the Commissioner has not taken seriously what the medical evidence demonstrates about his condition. Rec. doc. 13.  The Commissioner responds that substantial evidence supports the ALJ's finding that Williams was capable of performing a reduced range of sedentary work.

        The record demonstrates that the Commissioner provided Williams with the opportunity to present his application for SSI.  Medical records from Dr. Maki were reviewed before his application was denied.  R. 32-35.  Additional medical records were gathered before the ALJ hearing.  R. 103-193.  The Commissioner arranged for Williams to be examined by Dr. Mandich.  R. 194-209.  The

ALJ's decision demonstrates that the medical evidence was considered.  R. 11-13.  The Court has carefully reviewed the medical evidence.

Williams filed his motion for summary judgment on June 10, 2011 or nearly two years after the ALJ's decision.  The ALJ determined that he was not disabled through the date of the decision, July 20, 2009.  R. 15.  The Court is required to consider evidence relating to the time period for which benefits were denied.  Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).  Much of Williams' argument is addressed to his current condition, which is not relevant to the period under review.

The Commissioner did not determine that Williams can perform a full range of his pre-July 19, 2007 activities.  The Commissioner found that he possessed the residual functional capacity to perform sedentary work, except that he would need to alternate sitting after one hour to allow a stand or walk option for up to five minutes before returning to a seated position.  R. 12.  Sedentary work involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files or small tools.  20 C.F.R. 416.967(a).

The medical evidence supports the finding that Williams can perform sedentary work as limited by the ALJ.  In addition to the report by Dr. Mandich, R. 194-209, on November 15, 2007, the physical therapist reported that Williams was making good progress on restoring the range of motion in his knee, he was ambulating well, and he was attending therapy on an inconsistent basis. R. 158.  On January 15, 2008, he was seen by Dr. Maki, who noted that "he is actually doing great." The motion in the knee was from 0 degrees to 140 degrees.  R. 192.  On July 15, 2008, Williams returned to Dr. Maki.  Williams reported some pain, but noted that "he is doing every well."  R. 192.

The ALJ found that Williams' statements concerning the intensity, persistence and limiting effects of his symptoms were not credible to the extent they were inconsistent with the finding on

10

his residual functional capacity.  R. 13.  The ALJ concluded that the evidence did not support his

allegations of total disability.  R. 14.  Subjective complaints of pain do not take precedence over

conflicting medical evidence.  Harper v. Sullivan, 887 F.2d 92, 96 (5th Cir. 1989).

Substantial evidence supports the ALJ's finding that Williams could perform a reduced range

of sedentary work and was not disabled through the date of the ALJ's decision.

### RECOMMENDATION

Accordingly, IT IS RECOMMENDED that defendant's cross-motion for summary judgment

(Rec. doc. 14) be GRANTED and plaintiff's motion for summary judgment (Rec. doc. 13) be

DENIED.

### OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and

recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar

days after being served with a copy shall bar that party, except upon grounds of plain error, from

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by

the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir.

1996) (*en banc*).

New Orleans, Louisiana, this 26th day of October, 2011.

**SALLY SHUSHAN**
**United States Magistrate Judge**